# UNITED STATES DISTRICT COURT
## FOR THE NORTHEREN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MICHELLE STRICKLAND,            )
                                      )
      Plaintiff,              )
                                      )    No. 19 C 2621
      vs.                   )
                                      )    Judge Franklin U. Valderrama
THOMAS J. DART, *et al*.,           )
                                      )
      Defendants.           )

## DEFENDANTS SHERIFF DART AND COOK COUNTY'S MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendants, Thomas Dart, in his official capacity as Sheriff of Cook County (the "Sheriff's Office") and Cook County as indemnitor, by their attorney, Kimberly M. Foxx, State's Attorney of Cook County, and through her Assistant, Megan Honingford, for their memorandum in support of their motion for summary judgment state as follows:

### INTRODUCTION

Plaintiff is a correctional officer employed by the Sheriff's Office. She alleges that Defendant Sergeant Brad Sandefur[1] ("Sandefur") subjected her to discrimination and harassment on the basis of her race and gender. Plaintiff brings claims for discrimination and harassment the Sheriff under Title VII and the Illinois Human Rights Act. Plaintiff also brings claims under § 1983 solely against Sandefur. Summary judgment should be granted in favor of the Sheriff's Office because Plaintiff cannot show that Sandefur's alleged conduct was sufficiently severe or pervasive.

### FACTS

---

[1] Defendant Sandefur is represented by separate counsel in this matter. The Sheriff's Office and Cook County join in Sandefur's motion for summary judgment and incorporate all arguments therein.

Plaintiff Michelle Strickland has been employed as a correctional officer with the Cook County Sheriff's Office since June 13, 2005 and has been assigned to work in the transportation unit since approximately 2015. SOF, ¶ 1-2. Beginning in or about September 2017, Sgt. Sandefur was the sergeant on duty in the transportation unit during at least part of Plaintiff's shift. SOF, ¶ 4.

**Sandefur's Comments to Plaintiff**

On one occasion sometime between April and June 2015, Plaintiff allegedly made Sandefur tea when he was sick, and he said to her, "no woman is going to tell me what to do." SOF, ¶ 9.

Plaintiff alleges that on or about September 12, 2017, a couple of days after she returned from her duty injury leave, she was in the office of the transportation unit looking at her calendar when Sandefur said, "You people have a lot of nerve trying to take days off," which she took as an implication that she was lazy as a black woman. SOF, ¶ 11. Plaintiff testified that Sandefur actually said, "You people have a lot of nerve taking time off when you've been off for two years," a reference to the fact that she had just returned from leave. SOF, ¶ 12.

On January 26, 2018, Strickland approached Sandefur to offer condolences about his brother, who was extremely ill. SOF, ¶ 15. Sandefur allegedly then told her not to take offense but that his brother, who is white, was "the worst nigger he knows." SOF, ¶ 15. Sandefur went on to discuss his brother's problems and his family's situation. SOF, ¶ 15.

**Sandefur's Comments Made to Others in Front of Plaintiff or Overheard by Plaintiff**

In or about November 2017, Plaintiff overheard Sandefur interrupt an argument between a white officer and a black officer by allegedly telling the white officer he should not "argue with people who cannot communicate with you." SOF, ¶ 17. Plaintiff interpreted this comment to be based on race because, "There was a Black man and a white man communicating […] It was a

2

white man looking at another white man when he made the comment." SOF, ¶ 17. Plaintiff also allegedly heard Sandefur refer to a black officer as "Big Dummy." SOF, ¶ 20. She also heard other officers call the same particular officer, Lewis Smith, that name, and she did not hear Sandefur or any other officers call anyone else that name in any other context. SOF, ¶ 20.

On one occasion, Plaintiff allegedly overheard a conversation about the Me Too movement when she walked into the office of the transportation unit, including a statement by Sandefur that he believed women should "get over it." Sandefur did not make comments about the Me-Too movement directly to Plaintiff. SOF, ¶ 27.

Although Plaintiff alleges Sandefur stated directly to her that the Bible says women should honor men, Plaintiff testified that she overheard this comment when she walked into the office while Sandefur was talking to Sgt. Edwards and Officer Maxwell. She did not know what they were discussing before she walked in, and the comment was not directed to her. SOF, ¶ 25.

On one occasion, Plaintiff and Officer Voytas were joking in conversation about a jacket Plaintiff had that Voytas asked to see. Plaintiff alleges Sandefur said to Voytas that he should take charge of the situation and show her who's the man and take the jacket. SOF, ¶ 29.

In February 2019, in response to an officer jokingly asking for a favor because it was Black History Month, Sandefur replied that he did not care if it was Black History Month or Chinese History Month and what matters is that they are all blue. SOF, ¶ 32. Plaintiff remarked that what Sandefur had just said was offensive. Sandefur stated that "the only thing that matters is that we're all blue, we're all the same color." SOF, ¶ 33.

**Sandefur's Admonishments of Plaintiff**

In March 2018, Sandefur told Plaintiff to leave roll call because she was not wearing a bullet-proof vest, which had been issued to her by the department as part of her uniform, and which was not issued to every officer. SOF, ¶ 34.

On or about April 17, 2018, Sandefur issued Strickland an order to stand with the group in a certain area during roll call, and Plaintiff refused to move. SOF, ¶ 40. Sandefur wrote Plaintiff up for a five-day suspension as a result of this incident, but the suspension was reduced to a written warning. SOF, ¶ 41.

**Incidents Not Witnessed by Plaintiff**

Officer Orpheus Hannah told Plaintiff about an incident where Sandefur used the n-word at roll call. SOF, ¶ . Plaintiff did not witness this incident. SOF, ¶ 44.

Sandefur did not use the word in reference to any person. SOF, ¶ 45. Sandefur and another sergeant addressed the roll call and noted that they did not like the use of profanity or the use of the n-word. SOF, ¶ 46. A number of the officers asked what Sandefur meant by "the N-word" and goaded him into explaining what he meant. Sandefur said they knew what he meant, but they continued to ask, so he said the word. The officers laughed, and "it was a big joke" that he had been baited into saying it. SOF, ¶ 46.

Lt. Martin, an African-American man, was in the office at the time Sandefur used the N-word at roll call. Lt. Martin asked all the officers if they took offense to Sandefur's statement, and the officers said no. SOF, ¶ 47. The officers later told Sandefur they understood the point he was trying to make. SOF, ¶ 48.

Sandefur often told officers not to use the n-word. SOF, ¶ 49. The officers using the word were African-American. See SOF ¶ 50.

4

Plaintiff alleged in her EEOC Charge that Sandefur had once engaged in "threatening behavior" for which there were no repercussions. SOF, ¶ 65. Plaintiff did not witness the day Sandefur engaged in "threatening behavior." SOF, ¶ 66. This behavior included looking disheveled and expressing a thought of self-harm. SOF, ¶ 65.

**Allegations Concerning Widespread Discrimination at the Sheriff's Office**

Based on what she has heard from Officer Hannah, Strickland believed that officers in the Transportation unit would get assigned to the Markham runs and left on that assignment for long periods of time as a punishment. SOF, ¶ 68. She felt that black officers were being assigned to Markham more as a result of discrimination. SOF, ¶ 68. Plaintiff stated that officers of every race have worked the Markham run. SOF, ¶ . She stated that not every shift rotated assignments. SOF, ¶ 69.

Plaintiff also identified the temporary transfer of one Sergeant as an incident of racial discrimination. SOF, ¶ 70. She did not know the Sheriff's reasons for transferring this Sergeant or what had happened behind the scenes prior to the Sergeant being transferred. SOF, ¶ 70.

**Plaintiff's Complaints Regarding Sandefur's Other Conduct**

Lt. Martin stated that Plaintiff complained about Sandefur making her report to the roll call area like all the other officers and complained about the assignments Sandefur gave her. SOF, ¶ 53. Martin did not recall Plaintiff complaining that Sandefur was treating her differently based on her race or gender. SOF, ¶ 54.

Every time Plaintiff complained to him, Martin told her to put her complaint in writing so he could pass it on, and he also advised her that she had the option to report any complaint to OPR. SOF, ¶ 55. She did not take either action until her February 2019 complaint to OPR which prompted an investigation and Sandefur's reassignment. SOF, ¶ 56.

5

On or about July 10, 2018, Plaintiff submitted a charge of discrimination to the EEOC alleging continuing violations based on her race and gender. SOF, ¶ .

Nearly seven months later, on or about February 5, 2019, Plaintiff submitted a complaint register to OPR regarding Sandefur's comments about Black History Month. SOF, ¶ . Plaintiff's sworn complaint register did not contain any allegations concerning the assignments in the transportation unit, Sandefur's use of "you people," his instruction not to argue with people who cannot communicate, his admonishments of Plaintiff for not wearing her vest and for not following his orders during roll call, his alleged use of the n-word in reference to his brother or at roll call, or any other harassment alleged by Plaintiff.

Sandefur was reassigned to a different post during the pendency of the OPR investigation per Human Resources' request on February 14, 2019. SOF, ¶ 57.

Plaintiff did not complain to OPR about any of Sandefur's behavior before she filed the February 5, 2019 complaint register. SOF, ¶ 59. Plaintiff was always aware that she was able to complain to OPR about Sandefur's conduct. 294:12-15. SOF, ¶ 58. Plaintiff never complained to OPR about anyone's behavior besides Sandefur's. SOF, ¶ 60.

The Sheriff's Office maintains a written policy against harassment and discrimination. SOF, ¶ 6. The written policies against harassment and discrimination are available for all employees to access online and were previously available in a hard copy. SOF, ¶ 7. The Sheriff's Office holds yearly training on harassment and discrimination in the workplace. SOF, ¶ 5.

Three days after Plaintiff submitted her charge to OPR, Mary Robinson of the Sheriff's Human Resources Department attempted to email Plaintiff to discuss whether HR could do anything to help Plaintiff with the situation. SOF ¶ 62. The email was inadvertently addressed to a different county employee named Michelle Strickland. SOF ¶ 62. On April 10, 2019, Robinson

emailed Plaintiff stating that she knew Plaintiff had complained to OPR that she had seen Sandefur

at the transportation unit. Robinson explained that she met with Sandefur and instructed him not

to go to the transportation unit and offered to meet with Plaintiff. SOF ¶ 63.

## STANDARD OF REVIEW

Summary judgment is proper if the pleadings, depositions, answers to interrogatories,

admissions, affidavits and other materials show that there is no genuine issue of material fact and

that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Hakim v.

Accenture United States Pension Plan*, 718 F.3d 675, 681 (7th Cir. 2013). To oppose summary

judgment, the non-moving party must go beyond the pleadings and "set forth specific facts

showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248,

250 (1986). Summary judgment is warranted "against a party who fails to make a showing

sufficient to establish the existence of an element essential to a party's case, and on which that

party will bear the burden of proof at trial." *Hakim*, 718 F.3d at 681 (internal quotation marks and

citation omitted).

## ARGUMENT

### I. Plaintiff did not assert a *Monell* claim against the Sheriff and has failed to exhaust claims of harassment by anyone other than Sandefur.

Although Plaintiff's complaint uses the language of an alleged "policy, pattern, or practice

of discrimination," she has not brought a *Monell* claim, nor has she brought a clear claim for any

disparate treatment based on a policy, pattern, or practice. Her claims are based upon the hostile

work environment theory, not a disparate treatment theory. The "pattern or practice" framework

does not readily lend itself to an individual's Title VII hostile work environment claim and has

often been rejected in the Seventh Circuit. *See, e.g.*, *Perez v. Cook Cty. Sheriff's Office*, 2020 U.S.

Dist. LEXIS 26898 (N.D. Ill. Feb. 18, 2020); *Van v. Ford Motor Co.*, 332 F.R.D. 249, 274 (N.D. Ill. Aug. 22, 2019); *EEOC v. Int'l Profit Assocs.*, 2007 U.S. Dist. LEXIS 78378.

A Title VII plaintiff's claims are limited to the scope of their EEOC charge. *Cheek v. Western & Southern Life Ins Co.*, 31 F.3d 497, 500 (7th Cir. 1994). "Courts review the scope of an EEOC charge liberally." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cnty.*, 804 F.3d 826, 832 (7th Cir. 2015). However, "the relevant claim and the EEOC charge must, at a minimum, describe the same conduct and implicate the same individuals." *Id*.

Here, any purported claim of a widespread environment of harassment based on the actions of anyone other than Sandefur has not been exhausted or properly alleged. Plaintiff's complaint, EEOC charge, and OPR complaint are clearly directed solely at Sandefur's conduct and statements. In the section of her EEOC charge detailing race discrimination, Plaintiff alleged that she was afraid of retaliation for reporting, but was "under such emotional distress and anxiety from <u>his</u> disparate treatment of me" and was "living in a state of fear of crossing <u>Sergeant Sandefur</u>[.]" EEOC Charge, p. 3 (emphasis added). Similarly, in the section detailing gender discrimination, Sandefur is the only Sheriff's employee named. EEOC Charge, p.3-4. All allegations of conduct by other Sheriff's employees which was not included in her EEOC charges should be given no weight because they fall outside the scope of the charge and thus have not been properly exhausted. It is unclear whether Plaintiff intends to argue that there was a pattern of harassment or discrimination at the Sheriff's Office beyond Sandefur's behavior. For the reasons described below, Sandefur's conduct as alleged does not support a finding of a hostile work environment. Plaintiff cannot prove her claims, as she has alleged them, by expanding them to include conduct by individuals she did not include her in EEOC charge.

**II. Plaintiff cannot base her claims on alleged harassment which she did not witness.**

Even if Plaintiff had properly asserted a *Monell* style claim against the Sheriff, her claims would still fail because she cannot rely on conduct she did not witness in order to show that she personally was subjected to a hostile work environment. "A finding that an employer had a pattern or practice of tolerating sexual harassment in violation of Title VII does not necessarily establish that an individual claimant was exposed to harassment or that the harassment an individual claimant suffered violates Title VII." *Van v. Ford Motor Co.*, 332 F.R.D. 249, 274 (N.D. Ill. Aug. 22, 2019). Plaintiff must show that she was exposed to discrete incidents of severe and pervasive conduct, not an environment of harassment experienced by others, in order to hold an employer liable. *EEOC v. Int'l Profit Assocs.*, 2007 U.S. Dist. LEXIS 78378. Plaintiff cannot prove her claims, or expand her claims into a pseudo-class action, by creating a cloud of insinuation over events she did not actually witness. *See Howard v. Cook Cty. Sheriff's Office*, 2021 U.S. App. LEXIS 6389, 26-27 (7th Cir., March 4, 2021) ("we have repeatedly rejected hostile work environment claims that rest primarily on secondhand harassment.).

Plaintiff did not witness and cannot testify to one of the most significant incidents that she alleges exposed her to a hostile work environment: the incident in which Sandefur said the N-word at roll call. Sandefur's version of the incident is corroborated by several first-hand witnesses and is far less inflammatory than the story Plaintiff alleged in her EEOC charge and claims to have heard from Hannah. *See* PLAINTIFF 000029. Hannah's version of the incident differs from the other officers' and Sandefur's version, but even his account of what happened is less offensive than Plaintiff's retelling of what Hannah told her. Plaintiff's account of what Hannah told her happened would likely be considered inadmissible hearsay at trial, and her testimony regarding the incident should therefore not be considered at the summary judgment stage. *See Galdikas v. Fagan*, 342 F.3d 684, 695 (7th Cir. 2003) ("'Hearsay is inadmissible in summary judgment

proceedings to the same extent that it is inadmissible in a trial,'" quoting *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997)).

More importantly, the incident has little relevance to Plaintiff's claims because she did not witness it. "Offense based purely on hearsay or rumor really is 'second-hand;' it is less credible, and for that reason and also because it is less confrontational, it is less wounding than offense based on hearing or seeing[.]" *Yuknis v. First Student, Inc.*, 481 F.3d 552, 555-556 (7th Cir. 2007).

## II. Plaintiff cannot show that she was subjected to a severe or pervasive conduct due to her gender or race.

To succeed on her Title VII hostile work environment claims, Plaintiff must show that (1) she was subjected to conduct of a gendered or racial nature; (2) the conduct was severe or pervasive enough to create a hostile work environment; (3) the conduct was directed at her because of her gender and/or race; and (4) there is a basis for the Sheriff to be liable for Sandefur's conduct. *Whitaker v. N. Ill. Univ.,* 424 F.3d 640, 645 (7th Cir. 2005). To succeed on her IHRA hostile work environment claims, Plaintiff must show that a reasonable person would find that the work environment was hostile or abusive and that she herself perceived it to be hostile or abusive. *Cook County Sheriff's Office v. Cook County Comm'n on Human Rights*, 2016 IL App. (1st) 150718 at *P32. (2016). The standards for determining whether conduct was "severe or pervasive" under Title VII and/or "hostile or abusive" under the IHRA overlap. *See Id.* This element is highly fact-intensive. *See Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 901 (7th Cir. 2018). A hostile work environment plaintiff, like all Title VII plaintiffs, must show that the harassment she experienced materially altered the terms, conditions, or privilege of her employment. *EEOC v. RJB Props.*, 857 F. Supp. 2d 727, 739 (N.D. Ill. 2012). "Offhand comments, isolated incidents, and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment." *Adusumilli v. City of Chi.*, 164 F.3d 353, 361-362 (7th Cir. 1998).

Conduct that may be, in certain contexts, offensive but which is not directly related to Plaintiff does little to support a showing of a hostile work environment. *Yuknis,* 481 F.3d 552 at 555-556. "The more remote or indirect the act claimed to create a hostile working environment, the more attenuated the inference that the worker's environment was actually made unbearable[.]" *Id.*; *See Howard*, 2021 U.S. App. LEXIS 6389, *29-30 ("we have repeatedly rejected hostile work environment claims that rest primarily on secondhand harassment."). A number of the comments or behaviors Plaintiff points to in support of her claim, even if rude or offensive, are not relevant to Plaintiff personally and in any event, do not show a discriminatory animus. Those include (1) the nickname "Big Dummy" used to refer to another officer; (2) Sandefur's instruction to an officer who happened to be white not to argue with someone who cannot communicate with him while the officer argued with an officer who happened to be black; (3) discussions regarding the Me Too movement that Plaintiff overheard; (4) Sandefur's statement regarding the Bible's teachings on women honoring men, which Plaintiff overheard; and (5) rumors that black male officers were left on a less desirable rotation longer than others.

"The American workplace would be a seething cauldron if workers could with impunity pepper their employer and eventually the EEOC and the courts with complaints of being offended by remarks and behaviors unrelated to the complainant except for his having overheard, or heard of, them." *Yuknis* at 556.

**A. Plaintiff's allegations related to her gender do not show severe or pervasive conduct.**

The alleged incidents of harassment and discrimination Plaintiff experienced were not based on her gender and were not severe or pervasive enough to amount to a hostile work environment. "Title VII is 'not…a general civility code' and will not find liability based on the 'sporadic use of abusive language.'" *Ford v. Minteq Shapes & Servs.*, 587 F.3d 845, 848 (7th Cir.

2009), quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Here, Plaintiff has alleged no abusive language or conversations with sexual overtones. Plaintiff's claim of a gender-based hostile work environment rests on the following: (1) in 2015, Sandefur told Strickland no woman would tell him what to do; (2) Sandefur told Voytas to be a man and take a jacket back from Plaintiff; (3) Sandefur stated in conversation with other officers that the Bible says men should honor women; (4) Sandefur once said to Plaintiff, "you're getting sick, girl;" (5) Plaintiff's <u>feeling</u> that Sandefur could not believe that she had a master's degree because she was a woman; (6) Sandefur's comment that he did not have time for "this stupidness" when Plaintiff asked him about rotation staffing; (7) Sandefur's objection to Plaintiff not wearing her required vest; and (8) Sandefur's attempt to issue Plaintiff a suspension after she refused to follow a direct order.

The alleged comments and events, taken even in the light Plaintiff herself presents, do not amount to severe or pervasive harassment. *See, e.g., Scruggs v. Garst Seed Co.*, 587 F.3d 832 (7th Cir. 2009) (conduct not severe or pervasive when supervisor told plaintiff she "was made for the backseat of a car" and looked like "a dyke" and introduced her as person "in charge of cookies with sprinkles"); *Patt v. Family Health Sys.*, 280 F.3d 749 (7th Cir. 2002) (eight comments, two made directly to plaintiff, which included statement that the "only valuable thing to a woman is that she has breasts and a vagina," were too isolated to amount to severe or pervasive harassment); *Milligan-Grimstad v. Stanley*, 877 F.3d 705 (7th Cir. 2017) (questioning plaintiff about future pregnancy plans, telling client plaintiff planned to have a family, and commenting to plaintiff about another woman's revealing outfits did not amount to severe and pervasive conduct).

Sandefur's comment to Voytas to "be a man" and his use of "girl" as an informal address to Plaintiff may be overly familiar or slightly inappropriate for a workplace, but as expressions, they are too common for a reasonable jury to find them severely offensive or to find that they

altered the working conditions. Having alleged exactly one time each of these phrases was used, Plaintiff cannot show that the comments were pervasive. *Faragher* at 788; ("isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.") Similarly, Sandefur's discussion of the Bible could strike a jury as inappropriate for a workplace, but it was not commentary directed at Plaintiff or any other woman, and it was not a discussion of workplace gender roles. Even if Sandefur made the comment regarding Me Too as Plaintiff alleged, it was not directed at Plaintiff or any other woman in the Sheriff's Office and was not a disparaging comment about women. Finally, there is no indication even in Plaintiff's allegations that Sandefur's characterization of her questions about her rotation as "stupidness" had some gender basis. These conversations might amount to an obnoxious or unprofessional atmosphere, but it was not harassment so severe it materially altered any term of Plaintiff's employment. *See, e.g., Moser v. Ind. Dep't. of Corr.*, 406 F.3d 895, 903 (7th Cir. 2005) (a handful of comments of a sexual nature were not serious or threatening and did not rise to the level of a hostile work environment); *Hunt v. Wal-Mart Stores, Inc.*, 931 F.3d 624 (7th Cir. 2019) (approximately 5-10 comments by a supervisor to plaintiff about her breasts did not create an environment severe enough to show constructive discharge in the context of a hostile work environment claim).

In addition, Plaintiff made allegations in her EEOC charge that she could not get ahead in the Sheriff's Office without sleeping with someone. However, when asked to identify anyone she believed had done this or any other basis for this belief, she repeatedly declined. Plaintiff makes no allegation that she was ever approached or told that she had to engage sexually with someone in the Sheriff's Office in order to get ahead. Because Plaintiff can provide no evidence for this claim, it should be disregarded outright. *See Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007)

(summary judgment is the "put up or shut up moment" where a plaintiff must produce evidence of a claim). Plaintiff's claim for a gender-based hostile work environment should be dismissed as her allegations do not show severe or pervasive conduct, nor do they show that any comments to her were made due to her gender.

**B. Plaintiff's allegations of race-based comments do not amount to severe or pervasive conduct.**

Similarly, the race-based comments alleged by Plaintiff, even taken in the light in which she presents them, do not show severe or pervasive conduct. "Whether harassment is sufficiently serious to create the sort of hostile work environment that violates Title VII 'turns on a constellation of factors that include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Coss v Briggs Healthcare*, 2018 U.S. Dist. LEXIS 198437, *29 (N.D. Ill., Nov. 21, 2018).

The majority of Plaintiff's allegations rest on Plaintiff's interpretation of Sandefur's comments, not Sandefur's actual statements. A number of comments do not have an even tenuous connection to race and therefore did not contribute to a hostile work environment. *See Poullard v. McDonald*, 829 F.3d 844 (7th Cir. 2016). For example, Sandefur's "stupidness" comment, the conversations concerning her master's degree, and Sandefur's use of the word "girl" on one occasion show no connection to race. "Girl" is not a term solely used to refer to black women or to imply racial derision. No reasonable jury would find that Sandefur was using it in this context ("You're getting sick, girl.") to imply that Plaintiff was inferior to him for any reason. Similarly, Sandefur's objection to Plaintiff not wearing her issued vest at roll call has no connection to race, and Plaintiff cannot show that Sandefur did not make the same objection to white officers who had been issued a vest. While Plaintiff believed Sandefur subjected her to "trivial discipline" by issuing

her a suspension for admittedly failing to follow a direct order, conduct she admitted, he had issued the same discipline for the same infraction to another officer the same day.

As to her other allegations, Plaintiff's own testimony undercuts the racial animus she allegedly saw in Sandefur's behavior. For instance, she alleged that Sandefur referred to a black male officer as "Big Dummy." However, Plaintiff admitted that she heard many other people call this particular officer by that name, that she never heard Sandefur call anyone else by that name, and that she did not know who started calling this officer by that name. In other words, she was offended by this officer's nickname, attributed the nickname to his race, and arbitrarily blamed Sandefur for it. Plaintiff also claimed that Sandefur's use of the phrase "you people" was no doubt a reference to African-Americans. But Plaintiff's retelling of the conversation revealed that Sandefur actually said, "You people have a lot of nerve taking time off <u>when you've been off for two years</u>," a reference to the fact that she had just returned from leave. She further stated that her belief that he was referring to black people was based, in her words, on the fact that, "I'm a black woman and I'm the only person standing there." This interpretation clearly falls apart when the actual statement is examined. If Sandefur had meant specifically black officers, the sentence, "Black officers have a lot of nerve taking time off when they've been off for two years" makes no sense given that not every black officer has taken two years off. Plaintiff cannot point to a white officer who has taken two years off and then was celebrated by Sandefur for taking additional time off. While Sandefur's comment may have been inappropriate or even cruel, it was not based on race. Finally, Plaintiff saw racial animus in Sandefur's joke that Plaintiff was his "bad officer" was solely because Plaintiff "understood" Sandefur to be "engaging in stereotyping [Plaintiff] as "bad" because she is Black." Complaint, ¶ 25(c). Even in Plaintiff's version of the conversation, the

context makes it clear that Sandefur teasingly referred to her as his bad officer after Lt. Martin jokingly assumed that Plaintiff had asked to go home early. Pltf.'s Dep., 167:12-168:2.

That leaves two events Plaintiff alleges she actually witnessed and that actually contain references to race: (1) Sandefur's statement that he did not care if it was Black History Month and (3) Sandefur's use of the N-word to refer to his brother. "An objectively hostile work environment is not produced where most of the offensive comments giving rise to the claim were not directed at the plaintiff, and those that were directed at plaintiff were isolated." *Whittaker v. Northern Ill. Univ.*, 424 F.3 640, 645 (7th Cir. 2005); *EEOC v. RJB Props.*, 857 F. Supp. 2d 727, 755 (N.D. Ill. 2012).

Plaintiff testified that Sandefur made the Black History Month comment in response to a black officer joking that they should be allowed to say what they want because it was Black History Month, which largely matches Sandefur's version of the conversation. Her testimony further shows that Sandefur meant he did not care whether it was Black History Month when it came to how all the officers were doing their jobs. His statement "we're all blue" was clearly a reference to them all being members of law enforcement, as he stated. While, again, this comment could be taken by some as ignorant or rude, it was not clearly racially biased or severe enough to create a hostile work environment, even when considered in aggregate with everything else Plaintiff alleges.

Finally, Plaintiff alleges that Sandefur used the N-word in reference to his brother. The usage of a racial epithet, directed at an employee, can be "nearly per se" severe or pervasive conduct, depending on the circumstances. *Edmond v City of Chi.*, 2018 U.S. Dist. LEXIS 195184 (N.D. Ill. Nov. 15, 2018). However, "the mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate

Title VII." *EEOC v. RJB Props.*, 857 F. Supp. 2d 727, 739 (N.D. Ill. 2012). "One utterance alone does not create an objectively hostile work environment." *Smith v. Northeastern Ill. Univ.*, 388 F.3d 559, 567 (7th Cir. 2004); *See also Fellers v. Brennan*, 699 Fed. Appx. 554 (7th Cir. 2017) (plaintiff did not establish a hostile work environment when a black employee called him a "dumb white boy" multiple times during one incident).

In *Smith*, the plaintiff heard a white police officer, Leenheer, refer to two other officers as "black motherfuckers" and was told that Leenheer repeatedly refered to them by the n-. The court found that there was no hostile work environment because "on the single occasion [the plaintiff] overheard Leenheer use the racially-tinged offensive words," the words were not directed at her, although they were directed at her fellow black employees. *Id*. at 567. In comparison, the two officers about whom Leenheer was talking, Smith and Reeves, were allowed to proceed to trial on their claims. Smith testified that he overheard Leenheer call him the n-word to a group of coworkers. Other staff members reported that Leenheer and another white officer constantly talked about getting Smith and Reeves fired and referred to them using the n-word. *Id*. at 562. Still, Smith and Reeves lost at trial. *Id*. at 569.

In *Ford v. Minteq*, the plaintiff was the only African-American employee at his work site. One coworker referred to the plaintiff as "black African-American" or "black man," apparently repeatedly; the plaintiff's supervisor told him he did not have to worry about losing his job because the company wanted to appear integrated; another supervisor called the plaintiff a gorilla; the company applied different rules to the plaintiff when it came to his family attending the holiday party. *Ford*, 587 F.3d 845 at 847. The court found that this behavior, in the aggregate, did not amount to severe or pervasive conduct, in part because the gorilla comment was an isolated incident and because the behavior did not impact the plaintiff's job performance. *Id*. at 847-848.

Here, a one-time use of the n-word in reference to Sandefur's brother, and not in reference to Plaintiff or a black person, although bizarre, is not sufficient to support a jury finding of a hostile work environment. *See Smith,* 388 F.3d 559 at 567; *See McPhaul v. Bd. of Comm'rs*, 226 F.3d 558 (7th Cir. 2000) (overruled on other grounds) (conduct not severe or pervasive when supervisor said the n-word at least three times to plaintiff but did not direct the word to plaintiff and was repeating a comment made by a customer in one instance); *Rush v. MacArthur Found.*, 2014 U.S. Dist. LEXIS 62175, *17-20 (N.D. Ill. May 6, 2014) (no hostile work environment when plaintiff was called the n-word once). Certainly, Sandefur's use of the word was inappropriate and would likely be considered ignorant by most people. Plaintiff's version of the conversation, however, does not suggest that Sandefur had racial animus in mind when he used the word to refer to his white brother. Plaintiff was upset by Sandefur's statement that day but was not compelled to report it to anyone, and she has maintained that she always performed her job duties. The comment from Sandefur had no material impact on the terms or conditions of her employment. This incident stands alone as the single occasion Plaintiff actually heard Sandefur use a racially derogatory term. Even when considered in the aggregate with the comments Plaintiff considered to be racially motivated ("You're getting sick, girl;" "You people have a lot of nerve taking time off after you've been off for two years;" "Strickland is my bad officer."), this isolated comment does not support a finding of severe or pervasive conduct.

### III.    Plaintiff cannot show a basis for employer liability.

The final element of Plaintiff's Title VII claims is a basis for employer liability. *Whitaker,* 424 F.3d 640, 645. If the alleged perpetrator of harassment is the plaintiff's supervisor, and the supervisor's harassment results in a tangible employment action, the employer is strictly liable under Title VII. *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). However, even if the alleged

perpetrator is the victim's supervisor, if there was no tangible employment action, the employer may assert a two-part affirmative defense based on its reasonable care to prevent and correct harassment and the plaintiff's failure to take advantage of the employer's corrective resources. *Id*.

### A. Sandefur was not Plaintiff's supervisor within the meaning of Title VII.

For purposes of Title VII, "an employer may be vicariously liable for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim, i.e., to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Vance*, 570 U.S. 421 at 431. The Court "reject[ed] the nebulous definition of a 'supervisor' advocated in the EEOC Guidance and substantially adopted by several Courts of Appeals" and found that the plaintiff's "reliance on the colloquial use of the term 'supervisor' was misplaced." *Id*. at 432.

Sandefur, as a correctional sergeant, did not have the power to hire, fire, promote, reassign, or make any decision that would change Plaintiff's benefits or terms of employment. Although Sandefur wrote Plaintiff up for a suspension for her refusal to follow a direct order, her suspension was reduced to a written warning. SOF ¶ 41. The actual decision to suspend Plaintiff was out of Sandefur's authority. The ability to hire, fire, or suspend officers for longer than 30 days is not even vested in the Sheriff's Office, but rather is solely within the Cook County Sheriff's Merit Board authority. 55 ILCS 5/3-7012. Sandefur did not "supervise" Plaintiff within the meaning of Title VII. *See Vance* at 432. Accordingly, the Sheriff's Office's should only be held liable if it was negligent in discovering or remedying the harassment. *Parkins v. Civil Constructors of Illinois, Inc.,* 163 F.3d 1027, 1032 (7th Cir. 1998) (quoting *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1013 (7th Cir. 1997)). Here, although Plaintiff frequently worked with both Lt. Martin and Lt.

Ledesma, she never submitted any written complaints of racial or sexual harassment to them, and Lt. Martin did not recall ever hearing from Plaintiff that she felt harassed or discriminated against. Moreover, as soon as Plaintiff submitted a complaint register to OPR, Sandefur was reassigned to a different unit, and a representative from HR attempted to meet with Plaintiff. SOF ¶ 57, 62-63. The Sheriff's Office therefore promptly addressed the issue and was not negligent in discovering or remedying the behavior Plaintiff alleges.

### B. Plaintiff failed to avail herself of the Sheriff's Office's reporting measures.

If the court finds that (1) Sandefur was Plaintiff's supervisor; (2) Sandefur subjected Plaintiff to a hostile work environment; and (3) that Sandefur was Plaintiff's supervisor, the Sheriff's Office is permitted to assert affirmative defenses based the lack of a tangible employment action and Plaintiff's failure to report Sandefur's behavior. Plaintiff cannot establish employer liability because Sandefur did not subject Plaintiff to a tangible employment action and Plaintiff did not use the Sheriff's reporting mechanisms. *See, e.g., Vance* at 475.

The Sheriff's Office has a policy against discrimination and harassment. SOF ¶ 6. The policy details an employee's ability to report any discrimination or harassment to a supervisor, OPR or Human Resources. SOF ¶ 7. Plaintiff did not report Sandefur's conduct to OPR until seven months after filing her EEOC charge of discrimination and days after requesting her right-to-sue letter.

Plaintiff has alleged that a prior lawsuit brought by Officer Tanesha Cribbs put the Sheriff on notice of "other problems and complaints about" Sandefur and made Sandefur's conduct alleged by Plaintiff "foreseeable." Complaint, ¶ 26, 39. Plaintiff did not witness any of the events alleged in the *Cribbs* lawsuit and is not aware of the specifics of the case. Pltf.'s Dep., 102:4-15. Any attempt to argue that those events contributed to a hostile work environment for Plaintiff

should be disregarded. Moreover, the *Cribbs* lawsuit was resolved in 2013 without any factual findings being made. *See Cribbs v. Dart, et al.*; Case No. 13 C 2758, N.D. Ill.[2] It in no way put the Sheriff's Office on notice of any of the events Plaintiff alleges occurred four years later.

WHEREFORE, Defendants County of Cook and Thomas J. Dart request that this Court grant summary judgment in their favor on all of Plaintiff's claims and any other relief the Court deems just and proper.

Dated: April 2, 2021                    Respectfully Submitted,

                                        KIMBERLY M. FOXX
                                        State's Attorney of Cook County

                          By:     /s/ Megan M. Honingford
                                        Megan M. Honingford
                                        Assistant State's Attorney
                                        Labor and Employment Section
                                        500 Richard J. Daley Center
                                        50 West Washington Ave.
                                        Chicago, IL 60602
                                        (312) 603-3630
                                        Megan.honingford@cookcountyil.gov

---

[2] The court may take judicial notice of certain facts when they "are (1) not subject to reasonable dispute and (2) either generally known within the territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned." *Tank v. T-Mobile United States, Inc., 2013 U.S. Dist. LEXIS 115, *12-*13 (N.D. Ill. Aug. 15, 2013)*. Court dockets and court proceedings are judicially noticeable. *Id.*