UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHELLE STRICKLAND,

                Plaintiff,

v.

THOMAS J. DART, in his official
capacity as Sheriff of Cook County, BRAD
SANDEFUR, in his individual capacity,
COUNTY OF COOK, IL, as indemnitor
only, JAMES SIROKY, and ROCHELLE
PARKER,

                Defendant.

No. 19-cv-02621
Judge Franklin U. Valderrama

MEMORANDUM OPINION AND ORDER

Plaintiff Michelle Strickland (Strickland), a correctional officer with the Cook

County Sheriff's Office (CCSO), brings this lawsuit against Sergeant Brad Sandefur

(Sandefur), Thomas Dart (the Sheriff), in his official capacity as Sheriff of Cook

County, the County of Cook, IL (the County), Office of Professional Review (OPR)

Investigator James Siroky (Siroky), and OPR Director Rochelle Parker (Parker)

(collectively, Defendants) alleging that Defendants subjected her to a hostile work

environment on the basis of her gender and race in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Title VII), the Illinois Human Rights

Act, 775 ILCS § 5/1-101 *et seq.* (IHRA), and her civil rights under the First and

Fourteenth Amendments pursuant to 42 U.S.C. § 1983. R. 1[1], Compl. (bringing claims against Sandefur, the Sheriff, and the County); R. 119, Supp. Compl. (bringing claims against Sandefur, Siroky, and Parker). Specifically, Strickland alleges that Defendants discriminated against her based upon her race and gender by subjecting her to a hostile work environment and failing to take corrective action, and later retaliated against her for reporting the discrimination. Before the Court is Siroky and Parker's (hereafter, collectively, Defendants) motion to dismiss the claims against them in Strickland's supplemental complaint. R. 135, Mot. Dismiss. For the reasons stated in this opinion, the motion is granted.

## Background[2]

Strickland filed her complaint on April 18, 2019, asserting claims of race and gender discrimination and a hostile work environment against the Sheriff and County pursuant to Title VII and the IHRA, and against Sandefur for violating her Fourteenth Amendment equal protection rights. Compl. at 12–22. Specifically, the complaint "stems from [Sandefur's] direct and personal discrimination against Strickland based on her gender . . . and race[.]" *Id.* ¶ 2. The complaint alleges that Sandefur "subjected [Strickland] to unwelcome and ongoing and continuous distinct acts of discrimination," including that Sandefur said the n-word during roll call (though outside of Strickland's presence), called his white brother the "worst [n-word]

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

[2]The Court accepts as true all of the well-pleaded facts in the Complaint and Supplemental Complaint, and draws all reasonable inferences in favor of Strickland. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

that he knows," referred to a black officer as "Big Dummy," said the Me-Too Movement is unfair to men, and called Strickland "girl." *Id.* ¶ 25. Strickland further asserts that she "has reported the foregoing to Lieutenants and Sergeants . . . with little to nothing being done to change the bullying and discriminatory workplace culture." *Id.* ¶ 26. On July 10, 2018, Strickland filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging many of the same incidents of discrimination she alleges in her complaint. *Id.* ¶ 15.

After being deposed in this case, Strickland filed a motion for leave to file a supplemental complaint pursuant to Federal Rule of Civil Procedure 15(d), which the Court granted. R. 117. Strickland filed her supplemental complaint on June 27, 2022, bringing claims pursuant to 42 U.S.C. § 1983 against Siroky, Parker, and Sandefur for depriving her of her First Amendment rights (Count I) and Fourteenth Amendment equal protection rights (Count II) based upon events that occurred while this case was being litigated. Supp. Compl. at 14–18.

On February 4, 2020, Strickland gave her deposition in this case. Supp. Compl. ¶ 5. In her deposition, Strickland was asked about an incident where Sandefur instructed her to move while at roll call. *Id.* Strickland refused to move, so Sandefur wrote her up for a suspension, but she ultimately received only a written reprimand. *Id.* Strickland filed a Grievance Form complaining about that roll call incident, and

the following exchange occurred while Strickland was being asked about that

Grievance Form during her deposition:

> **Q: Okay. And so you filed a grievance because of this incident. Correct?**
>
> A: I did.
>
> **Q: Okay. And that's your signature on the grievance in the middle page – the first page of Exhibit 6 dated April 18th of 2019.**
>
> A: It is.
>
> …
>
> **Q: Okay. And then the next page, is this your grievance form, your – Actually, this looks like a writeup, but that is your signature on there. Correct?**
>
> A: Yes.
>
> …
>
> **Q: Okay. So you didn't move when he asked you to move. Is that right?**
>
> A: I did not.
>
> **Q: Okay. And then the next page looks like status form for grievances. Well, the bottom line is it was reduced to reprimand and you signed off on that. Right? So let's go back to page 1 of Exhibit 6. That's your signature on there under – next to grievance signature?**
>
> A. Actually, my union rep may have signed that.
>
> **Q: Grievance signature, do you see that?**
>
> A: Yeah, I see it.
>
> **Q: That's yours. Right?**
>
> A: No.
>
> **Q: It's not, where it says grievance signature? Do you see that?**
>
> A: Yeah.
>
> **Q: Yeah. Is that you?**
>
> A: That's me.
>
> MR. CASPER[3]: Objection. Asked and answered.
>
> THE WITNESS: That's me.

---

[3]Cass Casper is Strickland's counsel in this case.

MR. MILLER[4]: She said no. Now, she said yes. Okay.

BY MR. MILLER:

**Q: Okay. All right. Okay. That's it. All right, back to Exhibit 4.**

A: I was looking in the wrong space.

**Q: Okay. You got it. Okay. Back to . . .**

*Id.* at 2–3.

Under a box titled Step 1, "Basis of Grievance," the Grievance Form alleges:

The employer is in violation of the Collective Bargain Agreement. . . . R/D Strickland received D.A.F. for insubordination, *I was in no way insubordinate, when Sgt. Sandefur gave me an order to move from the corner of the roll call area I did.* The D.A.F. is missing information that the order was followed just so it can be called insubordination.

Supp. Compl. at 4 (emphasis added). Below the "Basis for Grievance," there is a "Grievant Signature" signed on "19 APR 18" and a "Union Rep. Signature (optional)" signed on "19 APR 18." *Id.* The signatures appear as below:



*Id.* at 4, ¶¶ 6–7 (the "Grievant Signature" reads "Ofc Strickland"). Directly below those signatures, there is a separate box labeled "Step 1 Disposition/Employer's Response" that says, "Reduced to written reprimand, matter now closed." *Id.* at 4. That box also contains two signatures, one for "Employer's/Designee's Signature" and one for "Grievant Signature," both dated "23 OCT 18." Those signatures appear as below:

___

[4]David Miller is Sandefur's counsel in this case.

5

*Id.* at 4, ¶¶ 6–7 ("Employer's/Designee's Signature" reads "Supt. Julian" and the "Grievant Signature," while difficult to read, represents Michelle Strickland).

Sandefur filed an OPR complaint register against Strickland accusing her of perjury based upon the grievance form's statement that Strickland was not insubordinate and moved from the corner of the roll call area, and her contrasting testimony during her deposition that she did not move when Sandefur instructed her to move. Supp. Compl. ¶ 14. The CCSO investigated Strickland's alleged perjury. *Id.* However, Strickland never wrote that grievance or signed that portion of the form; her fellow officer did. *Id.* ¶ 15.

Strickland alleges that during the deposition questioning, "Defendants muddied the water about what signature they were asking Michelle about by not clarifying which signature they were asking was hers. Supp. Compl. ¶ 8. Michelle was actually confirming that her signature was under the second "Step 1 Disposition" box, underneath Superintendent Julian's signature. *Id.* ¶ 9. She was also denying that the signature to the left of "19 APR 18" was her signature, "which counsel for Defendant Sandefur then covered up by saying sarcastically, 'She said no. Now, she said yes. Okay.'" *Id.* ¶ 10–11 ("Defendants did not clear this up during the deposition, that is, what signature Michelle was denying belonged to her, and what signature she was confirming belonged to her.").

6

Strickland alleges that the two signatures in question are completely different, and that it is common practice at the Cook County Department of Corrections (CCDOC) for union representatives or fellow officers skilled at grievance writing to write grievances on behalf of other officers, and then sign the officer's signature on the grievance form. Supp. Compl. ¶ 13.

On or about August 13, 2021, Strickland was sent a completed OPR Investigative Summary notifying her of a 75-day suspension for her alleged untruthfulness. Supp. Compl. ¶ 16; *see id.* at 19 (Exhibit A) (sustaining the case for Conduct Unbecoming because "[t]here is sufficient evidence to support the allegation Strickland violated department conduct policy by being untruthful at a deposition on February 4, 2020."). Strickland alleges that OPR did nothing to investigate the facts surrounding the discrepancy in signatures on the grievance form and did no investigation into page 205 of the deposition transcript to try to understand which of the two signatures she was referring to when counsel presented the grievance form to her at her deposition. *Id.* ¶ 17. The investigation "could have easily verified which signature was truly Michelle's, had it simply compared it to the signature on the Disciplinary Action Form ('DAF')," which looks as follows:

*Id.* ¶¶ 18–19, at 7–8 (the DAF signature matches the one under "Supt Julian" on the Grievance Form, but not the signature on the Grievance Form stating "Ofc Strickland"). "Indeed, the discovery in this case consists of dozens of examples of Michelle's true signature, showing that it matches the second one on the grievance form[.]" *Id.* ¶ 20 (showing other examples). And Sandefur himself has allegedly seen her signature at least dozens of times, if not hundreds, and would know or should be able to identify her signature. *Id.* ¶ 29.

Further, Strickland's real signature on the Grievance Form represented her accepting Superintendent Julian's settlement reduction of the suspension to a written reprimand. Supp. Compl. ¶ 21. Officers' signatures on grievance forms accepting reductions of discipline is commonplace during the grievance process, just like union representatives and fellow officers signing officer signatures on grievance forms is overwhelmingly commonplace at CCDOC. *Id.* ¶ 22. Without these practices, the grievance process at CCDOC would grind to a halt. *Id.* The CCDOC possess hundreds of grievances signed by union representatives in lieu of the actual grieving officer, many of which are signed by the grieving officer for purposes of settlement after a grievance hearing and reduction of discipline. *Id.* ¶ 23. The Sheriff failed to properly investigate this and instead suspended her for 75 days. *Id.* ¶ 24.

Strickland contends Sandefur filed the complaint register maliciously in retaliation for her having filed this lawsuit and for having filed a complaint register at OPR naming him. Supp. Compl. ¶ 30.

Defendant James Siroky, an OPR Investigator, led the investigation of Sandefur's complaint register against Strickland. Supp. Compl. ¶ 2. Defendant Rochelle Parker then signed off on the OPR investigator report issuing a 75-day suspension, and forged the signature of OPR Executive Director Daniel Peters on the OPR Summary Report. *Id.* ¶ 3, at 13[5]. Strickland alleges that the investigation of the Sheriff's complaint register against her was characterized by a "slipshod review of documents, failure to interview witnesses . . . and failure to analyze documents." *Id.* ¶ 27, 31 ("At all times, Defendant Siroky and Parker conducted a terrible, slipshod investigation with the intent of punishing Michelle for having tried to raise discrimination issues.").

In Count I, Strickland asserts she had a non-personal, protected First Amendment interest in reporting allegations of race and gender discrimination "as well as retaliation" for such reporting. Supp. Compl. ¶¶ 35, 43 (Defendants were "motivated by retaliatory animus towards Michelle for having pursued this case and for her internal discrimination reporting."). In Count II, she alleges that she had an Equal Protection right to be free from race and gender discrimination and retaliation for her protected acts in reporting the same, and Defendants deprived her of those rights by completing a sham investigation and issuing her the 75-day suspension. *Id.*

---

I certify that no political reasons or factors were considered in any decision I made or action I took relating to this employment action. Further, I do not know of, nor do I have any reason to believe that anyone else considered or took action based on political reasons or factors with respect to this employment action.

_James Siroky #5019_      _May 7, 2021_
Senior Investigator James Siroky, *5019      Date

_Rochelle Parker_      _May 7, 2021_
Director Rochelle Parker, *112      Date

_Daniel Peters (Rp)_      _5/7/2021_
Executive Director Daniel Peters      Date

5

¶¶ 48–49; *id.* ¶ 51 ("This retaliation has caused huge personal distress[.]"). She requests that the Court rescind her suspension, expunge it from the record, award her compensatory damages, and order that the CCSO revamp its entire process as it relates to discrimination and retaliation. *Id.* at 15, 17.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79. Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

## Analysis

### I.    Count I – First Amendment

Defendants first argue that Strickland fails to allege facts establishing that she engaged in speech as a private citizen, so her claim in Count I for retaliation

under the First Amendment should be dismissed. R. 136, Memo. Dismiss at 4. "To establish a claim for retaliation in violation of the First Amendment, a public employee first must prove that her speech is constitutionally protected." *Kubiak v. City of Chicago*, 810 F.3d 476, 481 (7th Cir. 2016) (whether speech is constitutionally protected is a question of law). "For a public employee's speech to be protected under the First Amendment, the employee must show that (1) [s]he made the speech as a private citizen, (2) the speech addressed a matter of public concern, and (3) h[er] interest in expressing that speech was not outweighed by the state's interests as an employer in 'promoting effective and efficient public service.'" *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013) (quoting *Houskins v. Sheahan*, 549 F.3d 480, 490 (7th Cir. 2008)).

### a. Speaking as a Private Citizen

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Kubiak*, 810 F.3d at 481 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 421 (1951)). "Determining the official duties of a public employee requires a practical inquiry into what duties the employee is expected to perform, and is not limited to the formal job description." *Carter v. Illinois Gaming Bd.*, 2020 WL 1639914, at *3 (N.D. Ill. Apr. 2, 2020) (quoting *Kubiak*, 819 F.3d at 481). Speech that takes place "inside [an] office, rather than publicly" or that "concerned the subject matter of [the plaintiff's] employment" does not necessarily fall outside of the First Amendment's scope. *Carter*,

2020 WL 1639914 at *3. "The key question, rather, is whether the speech was made 'pursuant to [the employee's] official duties' . . . that is, whether the speech 'owe[d] its existence to a public employee's professional responsibilities[.]" *Id.* (quoting *Garcetti*, 547 U.S. at 420–22).

"If the public employee reports official misconduct in the manner directed by official policy, to a supervisor or an external body with formal oversight responsibility, then the employee speaks pursuant to her official duties and her speech is unprotected by the First Amendment." *Carter*, 2020 WL 1639914, at *3 (citing *Roake v. Forest Pres. Dist. of Cook Cnty.*, 849 F.3d 342, 346–47 (7th Cir. 2017)); *see Kubiak*, 810 F.3d at 481–82 (explaining that a court "must make a practical inquiry into what [the plaintiff] was expected to do as an employee" and reasoning that, generally, "an employee who is verbally assaulted by a colleague would be expected to report the inappropriate behavior to a supervisor."). In contrast, an employee who "reports misconduct outside official channels or in violation of official policy" speaks as a private citizen. *Carter*, 2020 WL 1639914, at *3 (finding that the plaintiff's "First Amendment retaliation claim fails as a matter of law insofar as it rests on [the plaintiff's] internal complaints").

Defendants argue that Strickland's allegations that she reported Sandefur's race and gender discrimination to lieutenants, sergeants, and the Sheriff's Office establish that her internal complaints to her superiors were made pursuant to her official duties. Memo. Dismiss at 7. Defendants acknowledge that the filing of a lawsuit or EEOC charge may serve as evidence that a plaintiff was acting as a private

citizen, but they argue that "'not every legal gesture – not every legal pleading – is protected by the First Amendment,' particularly where the conduct complained of is personal to the plaintiff." *Id.* (quoting *Sneed v. City of Harvey*, 6 F. Supp. 3d 817, 839 (N.D. Ill. 2013) (finding that Sneed's complaint in his federal lawsuit for false arrest was not entitled to First Amendment protection, as a matter of public concern, because the "incident affected only him, and he sought relief only for himself" and thus was "not acting from a desire to expose police corruption."). Defendants reason that Strickland's EEOC charge and lawsuit arising from her allegations of individual harassment and discrimination therefore are not entitled to First Amendment protection.

Strickland counters that she was speaking as a private citizen by advocating against discrimination coming from a public institution. R. 147, Resp. at 4. She argues that even speech made inside a place of work and relating to the job is not automatically related to official job duties. *Id.* (citing *Garcetti*, 547 U.S. at 419–22). She insists that acting "as an advocate against racial and gender discrimination in the court of law is outside of her job duties[.]" *Id.* She further maintains that she is "uniquely qualified" to speak on matters concerning government policies and it is essential that she be able to speak freely on these issues without fear of retaliation. *Id.* (quoting *City of San Diego, Cal. v. Roe*, 543 U.S. 77, 82 (2004); *Lane v. Franks*, 573 U.S. 228, 240 (2014)).

The Court agrees with Strickland on this issue. Strickland's supplemental complaint does not allege that Siroky and Parker retaliated against Strickland

13

merely for reporting discrimination to lieutenants, supervisors, or the OPR—her official channels. Rather, it alleges that she filed a charge with the EEOC and, subsequently, this lawsuit, for which Defendants took additional retaliatory action in filing an OPR complaint against her and suspending her for 75 days. Supp. Compl. ¶ 43 (Defendants were "motivated by retaliatory animus towards Michelle for having pursued this case and for her internal discrimination reporting."). By alleging that she reported misconduct outside official channels, Strickland plausibly alleges that she was speaking as a private citizen. *Carter*, 2020 WL 1639914, at *3 (noting that testifying about misconduct to a jury or grand jury may be constitutionally protected). The authority cited by Defendants on this point also supports Strickland. Defendants insist that her complaints are strictly personal, citing *Sneed*. However, the language Defendants cite to in their argument regarding this element is taken from the court's discussion in *Sneed* about whether Sneed spoke on a matter of public concern—not whether he spoke as a private citizen. Memo. Dismiss at 7. In the court's section analyzing Sneed's speech as a private citizen, the court found that "Sneed was not acting as a police officer when he filed lawsuits and EEOC complaints against the city." *Sneed*, 6 F. Supp. 3d at 837 (also concluding that Sneed "spoke as a citizen when he reported alleged misconduct to Eaves, the IAD, and others within the police department."). The Court therefore finds that, insofar as Strickland's First Amendment claim rests on her EEOC charge and her present lawsuit, she was speaking as a private citizen.

### b. Speaking on a Matter of Public Concern

Defendants also contend that Count I fails because Strickland does not allege facts establishing that her speech addressed a matter of public concern. *Kristofek v. Vill. of Orland Hills*, 712 F.3d 979, 984 (7th Cir. 2013) (speech being retaliated against must involve matter of public concern). "[P]ublic concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication." *Carter*, 2020 WL 1639914, at *4 (quoting *Craig v. Rich Twp. High Sch. Dist. 227*, 736 F.3d 1110, 1116 (7th Cir. 2013)). In answering that "question of law," the Court must look to the "content, form, and context" of the speech. *Kristofek*, 712 F.3d at 984 (While content is "the most important factor," the motive of the speaker is relevant as part of the context). "The subject matter of the speech is not determinative," rather, the Court "must focus on the particular content . . . of the speech." *Kubiak*, 810 F.3d at 483 (internal quotations and citations omitted). "In sum, we ask whether the objective of the speech—as determined by content, form, and context—was to 'bring wrongdoing to light' or to 'further some purely private interest.'" *Id.* (quoting *Kristofek*, 712 F.3d at 985) (simply furthering a "purely personalized grievance" does not involve a matter of public concern)).

Defendants argue that the supplemental complaint is devoid of any factual allegations that Strickland reported, either internally or externally, pervasive race or gender discrimination throughout the department. They maintain that her complaints focused on her personal grievance against Sandefur, as shown by her

failure to identify wrongdoers besides him or any co-workers who were also subjected to discrimination. Memo. Dismiss at 8–9 (citing *Carter*, 2020 WL 1639914, at *4 ("[W]here, as here, a government employee complains that a fellow employee, in connection with workplace interactions, treated her in an improper manner, the speech does not qualify as a matter of public concern.")). In addition, regarding Strickland's filing of this lawsuit, Defendants point out that a "public employee has no First Amendment claim unless the lawsuit involves a matter of public concern." *Salas v. Wisconsin Dep't of Corr.*, 493 F.3d 913, 925 (7th Cir. 2007).

Strickland responds that having a personal stake in the subject matter of the speech "does not necessarily remove the speech from the scope of public concern." Resp. at 5 (quoting *Button v. Kibby-Brown*, 146 F.3d 526, 529 (7th Cir. 1998)). She emphasizes that "[r]ace discrimination 'continues to be a matter of grave public concern[,]'" especially given the public outcry regarding discriminatory acts taken by police that can prove fatal to citizens. *United States Equal Emp. Opportunity Comm'n v. Groupon, Inc.*, 2016 WL 5110509, at *5 (N.D. Ill. Sept. 21, 2016) (quoting *E.E.O.C. v. Konica Minolta Bus. Sols. U.S.A., Inc.*, 639 F.3d 366, 371 (7th Cir. 2011)). Strickland points to allegations in her original complaint to argue that the "overall content, form, and context of [her] lawsuit and EEOC charge underlying this case show that her speech is on matters of public concern. Resp. at 6. Specifically, she highlights various allegations that she says go beyond just what she experienced, but were directed to other CCSO staff or demonstrate the toxic culture of the CCSO as a whole. *Id.* (specifically mentioning, among others, Sandefur's comments about Black

History Month, the n-word, and his comments stating "you people," "Big Dummy," and "no woman"). Lastly, she argues that Defendants' position "leaves [her] with no avenue for relief as she is expected to neither report misconduct to her superiors nor withhold widespread grievances as either would make her ineligible to bring this suit." Resp. at 8.

Defendants are correct that Strickland's speech here did not address a matter of public concern. True, the public has an interest in rooting out racial and gender discrimination, but the subject matter of the speech is not determinative. *Kubiak*, 810 F.3d at 483. Strickland's complaints against Sandefur, as articulated in the complaint and supplemental complaint, are purely personal. While her allegations of racial discrimination involved incidents where Sandefur was talking to others besides her, there were no allegations in her complaint that anyone else was offended or discriminated against by Sandefur's comments. *See Sneed*, 6 F. Supp. 3d at 839 ("The incident that formed the basis for Sneed's lawsuit affected only him, and he sought relief only for himself."). Her motivation—which is relevant to the context of the speech—was therefore not as a "whistleblower" bringing forth "government corruption and malfeasance." *Id.* (quoting *Spiegla v. Hull*, 371 F.3d 928, 937 (7th Cir. 2004)). Strickland further fails to cite any facts that would lead to an inference that Sandefur's discriminatory actions constituted a discriminatory employment practice or policy affecting the entire department. *See* Compl. ¶¶ 27, 28 (alleging that Strickland "repeatedly reported *her* problems with Sergeant Sandifer [sic]"; "*Plaintiff* has had to endure nearly 18 months of discriminatory terms and conditions of

employment"; and the Sheriff failed to correct "discriminatory conduct *toward Plaintiff*") (emphasis added). In addition, Strickland's citations to *Groupon* and *Konica Minolta* are inapplicable, because they address the enforcement of subpoenas and do not involve First Amendment claims. 2016 WL 5110509, (N.D. Ill. Sept. 21, 2016); 639 F.3d 366 (7th Cir. 2011).[6]

In short, the Court finds that Strickland fails to plausibly allege that she was speaking on a matter of public concern, and therefore, Count I fails.

## II.  Count II – Fourteenth Amendment and Retaliation

In Count II, Strickland asserts a claim for retaliation under the Fourteenth Amendment. Defendants argue that the claim fails as a matter of law because retaliation claims cannot be maintained under the equal protection clause. "[T]he right to be free from retaliation may be vindicated under the First Amendment or Title VII, but not the equal protection clause." *Boyd v. Illinois State Police*, 384 F.3d 888, 898 (7th Cir. 2004) (citing *Vukadinovich v. Bartels*, 853 F.2d 1387, 1391–92 (7th Cir. 1988) (plaintiff's equal protection claim alleged "only that he was treated differently because he exercised his right to free speech" and thus was "a mere rewording of plaintiff's First Amendment-retaliation claim")).

Defendants argue that Strickland's allegations in the supplemental complaint's equal protection claim mirror those in her First Amendment retaliation

---

[6]Strickland argues that her interest in commenting on a matter of public concern outweighs her employer's interest in promoting efficiency. Resp. at 9 (citing *Pickering v. Board of Ed. of Tp. High Sch. Dist.*, *205*, 391 U.S. 563 (1968)). However, because the Court finds that Strickland's speech did not touch on a matter of public concern, the Court need not engage in a *Pickering* balancing test. *Roe*, 543 U.S 77 (2004); *Connick v. Myers*, 461 U.S. 138, 141 (1983).

claim; she alleges that they retaliated against her for pursuing the instant litigation and internal discrimination reporting, by initiating a sham investigation and issuing her a 75-day suspension. Memo. Dismiss at 10–11 (citing *Yatvin v. Madison Metro. Sch. Dist.*, 840 F.2d 412, 419–20 (7th Cir. 1988) ("[R]etaliating against a person for filing charges of sex discrimination is not the same as discriminating against a person on grounds of sex" and it is not "plausible that Congress would have wanted to allow a victim of a Title VII violation to bypass the administrative procedures created by the statute . . . and go directly to court, through the illogical expedient of equating discrimination against a person for filing charges of sex discrimination to sex discrimination itself.")). Further, they assert that she fails to allege any facts to support a plausible inference that Defendants investigated and suspended her because of her protected trait or membership in a protected class. Memo. Dismiss at 11.

In response, Strickland asserts that *Boyd* and *Yatvin* are inapplicable because her Fourteenth Amendment claim is based on allegations that Defendants retaliated against her not solely based on her status as a litigant, but as a black person and woman. Resp. at 10 (citing Supp. Compl. ¶ 49 ("In direct retaliation for her protected activity, *and due to her race and gender*, Plaintiff suffered a deprivation of equal protection of the laws[.]") (emphasis added)). She argues that her allegations support a plausible inference that Defendants denied her equal protection, including that they failed to properly investigate Sandefur's claims by, in part, sloppily misreading her deposition testimony. Resp. at 11–12 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 545 (2007) (complaint need not include "detailed factual allegations"); *Locke v. Haessig*, 788 F.3d 662 (7th Cir. 2015)).

The Court agrees with Defendants. There are absolutely no allegations in the complaint or supplemental complaint supporting the inference that Siroky and Parker were discriminating against Strickland because of her race or gender. *See Iqbal*, 556 U.S. at 678 (complaint does not suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."). That Strickland alleges in her supplemental complaint that they retaliated against her due to her race and gender does not make the allegation plausible. *See Pam v. City of Michigan City, Ind.*, 2013 WL 1752494, at *1 (N.D. Ind. Apr. 23, 2013) ("While the court must accept 'well-pleaded, non-conclusory factual allegations,' legal conclusions and conclusory statements are not accepted as true.") (quoting *Iqbal*). Sandefur was the one who filed the complaint against Strickland, and without more than Strickland's allegations of a "sloppy investigation" and "slipshod review of documents," the Court cannot impute Sandefur's alleged racial and gendered discriminatory animus to Siroky and Parker. Supp. Compl. ¶¶ 27, 38; *Iqbal*, 556 U.S. at 678. In addition, while Strickland cites to *Locke*, that case is inapposite. There, the court addressed supervisory liability for constitutional violations, and Strickland does not allege that Sandefur was under Siroky or Parker's supervision. 788 F.3d at 669 (Under § 1983, "a government official 'is only liable for his or her own misconduct.'"). Because she only plausibly alleges that Defendants retaliated against her for filing her internal complaints and the present lawsuit, Strickland cannot bring her retaliation claim pursuant to the

20

Fourteenth Amendment. *See also Schloss v. City of Chicago*, 2019 WL 6716613, at *4 (N.D. Ill. Dec. 10, 2019). Count II therefore also fails.

In their motion, Defendants request that the Court dismiss Strickland's claims with prejudice. Mot. Dismiss at 1. Strickland requests in her response that the Court allow her to amend her complaint. Resp. at 13. Because there are possible allegations that Strickland could make to maintain her claims, the Court will provide her the opportunity to amend her complaint. She shall file an amended complaint on or before April 14, 2023.

## Conclusion

For the foregoing reasons, Siroky and Parker's motion to dismiss is granted, and the claims against them are dismissed without prejudice. Strickland shall file a new complaint on or before April 14, 2023.

Dated: March 31, 2023

United States District Judge
Franklin U. Valderrama