IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHELLE STRICKLAND,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS J. DART, in his official capacity as Sheriff of Cook County, BRAD SANDEFUR, in his individual capacity, COUNTY OF COOK, IL, as indemnitor only, JAMES SIROKY, and ROCHELLE PARKER,<br><br>Defendants. | No. 19-cv-02621<br><br>Judge Franklin U. Valderrama |

ORDER

Plaintiff Michelle Strickland (Strickland), a correctional officer with the Cook County Sheriff's Office (CCSO), sued Sergeant Brad Sandefur (Sandefur), Thomas Dart (the Sheriff), in his official capacity as Sheriff of Cook County, the County of Cook, Illinois (the County), Office of Professional Review (OPR) Investigator James Siroky (Siroky) and OPR Director Rochelle Parker (Parker) (collectively, Defendants) alleging that Defendants subjected her to a hostile work environment on the basis of her gender and race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Title VII), the Illinois Human Rights Act, 775 ILCS § 5/1-101 *et seq.* (IHRA), and her civil rights under the First and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. R. 1, Compl.[1] (bringing claims against Sandefur, the Sheriff, and

---

[1] Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

the County); R. 119, Supp. Compl. (bringing claims against Sandefur, Siroky, and Parker). The Court previously granted summary judgment in favor of Sandefur, the Sheriff, and the County on all claims alleged in the original complaint. *See Strickland v. Dart*, 2023 WL 2745725, at *20 (N.D. Ill. Mar. 31, 2023) ("*Strickland I*"). The Court also granted Siroky and Parker's motion to dismiss the claims against them in Strickland's supplemental complaint. *Strickland v. Dart*, 2023 WL 2746879, at *9 (N.D. Ill. Mar. 31, 2023) ("*Strickland II*"). The only remaining claims are those brought against Sandefur in the supplemental complaint, specifically, that Sandefur retaliated against Strickland in violation of the First Amendment and the Fourteenth Amendment's Equal Protection clause because she reported race and sex discrimination. Before the Court is Sandefur's motion for summary judgment. R. 196, Mot. Summ. J. For the following reasons, the Court grants the motion for summary judgment.

## Background[2]

### I. Material Facts

The following facts are set forth favorably to Strickland, the non-movant, as the record and Local Rule 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012); *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 937 (7th Cir. 2003). While the Court draws all reasonable inferences from the facts in Strickland's favor, the

---

[2]This background is derived from the parties' Local Rule 56.1 Statements of Material Facts, and the responses to those statements. *See* R. 198, DSOF (Sandefur's Statement of Facts); R. 207 at 1–25, Pl. Resp. DSOF (Strickland's Response to Sandefur's Statement of Facts); R. 207 at 25–35, PSOAF (Strickland's Statement of Additional Facts); R. 97 at 1–13 (Strickland's Response to Sandefur's Statement of Facts); R. 210, Def. Resp. PSOAF (Sandefur's Response to Strickland's Statement of Additional Facts).

2

Court does not "necessarily vouch[] for their accuracy." *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015) (citation omitted); *see also Knopick v. Jayco, Inc.*, 895 F.3d 525, 527 (7th Cir. 2018) (citation omitted) ("Given this summary judgment lens, we do not vouch for the objective truth of all of these facts."). This background section details all material undisputed facts and notes where facts are disputed, to the extent the disputed facts are supported by record evidence. The Court assumes familiarity with *Strickland I* and *Strickland II*.

Strickland has been employed as a correctional officer for the CCSO in the Transportation Unit of the Cook County Department of Corrections since 2015. DSOF ¶ 9. Strickland has not worked since August 2021 due to disability and taking her compensatory time. *Id.* Since about 2013 or 2014, Sandefur was a Correctional Sergeant for the CCSO in the Transportation Unit, and was one of Strickland's immediate supervisors during the relevant time period. *Id.* ¶ 10.

The CCSO maintains written policies against harassment and discrimination, including gender and race discrimination. DOSF ¶ 75.

### A. Race and Gender Discrimination

Strickland filed her original complaint on April 18, 2019, asserting claims of race and gender discrimination and a hostile work environment against the Sheriff and County pursuant to Title VII and the IHRA, and against Sandefur for violating her Fourteenth Amendment equal protection rights. Compl. at 12–22. As stated above, the Court granted summary judgment in favor of the Sheriff, the County, and Sandefur on those claims. *Strickland I*. In *Strickland I*, the Court described the

3

specific incidents of discrimination alleged by Strickland and supported by the statement of facts and the record. 2023 WL 2745725, at *2–6. The Court does not again describe each specific incident in this background section (nor do the parties in the background section of their briefs pertaining the Sandefur's motion), but will detail any relevant to the Court's analysis as necessary. Briefly, Strickland provided evidence that, among other acts of discrimination, Sandefur said the n-word during roll call (though outside of Strickland's presence), stated during a different roll call that he did not care about Black History Month, called his white brother the "worst [n-word] that he knows," referred to a black officer as "Big Dummy," and called Strickland "girl." PSOAF ¶¶ 6, 8–10, 13.

Strickland reported Sandefur's conduct to two different lieutenants. PSOAF ¶¶ 1, 13–14. On July 10, 2018, Strickland filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging many of the same incidents of discrimination she alleges in her complaint. DSOF ¶ 35–38. She also filed a Complaint Register with OPR on February 5, 2019 complaining about the incident regarding Black History Month. PSOAF ¶ 15; *Strickland I*, 2023 WL 2745725, at *8.

### B. Roll Call Incident

On April 10, 2018, during roll call, Strickland refused to obey an order from Sandefur (the Roll Call Incident). DSOF ¶¶ 12–13, 40. Sandefur issued Strickland an Employee Disciplinary Action Form (DAF) due to her insubordination. *Id.* ¶ 16. As a result of the DAF, Strickland's Union Steward, LC Alexander, through Teamsters Local 700, filed a grievance without Strickland's knowledge, but with what purports

4

to be Strickland's signature on the grievance form. *Id.* ¶¶ 19, 21–22. The grievance form reads that Strickland obeyed Sandefur's order at the roll call incident. *Id.* ¶ 20.

On October 23, 2018, Strickland, along with LC Alexander, attended her grievance hearing regarding the Roll Call Incident. DSOF ¶ 23. Superintendent Sean Julian heard Strickland's grievance and, although Strickland faced a 5-day suspension for insubordination, the parties reached a settlement, whereby Strickland received a written reprimand. *Id.* ¶¶ 23, 33. Strickland did not inform Superintendent Julian that she did not obey Sandefur's order during the roll call incident. *Id.* ¶ 25. Strickland admitted at her first deposition for this case that she did not obey Sandefur's order at the roll call incident, which she later confirmed at a second deposition. *Id.* ¶¶ 39–40.

At Strickland's first deposition, she initially stated that she signed the grievance form, but later clarified that she did not sign the grievance form. Pl.'s Resp. DSOF ¶¶ 43–44 (citing R. 198-1, Strickland Dep. 1 at 203–205). Sandefur was present during Strickland's first deposition. DSOF ¶ 45. Sandefur testified that he believed that Strickland signed the grievance form, or at least reviewed its contents, before submitting it because it appeared to have Strickland's signature and because, based on his experience as a union steward and at the CCSO, in all instances (but class grievances) the grievant personally signed grievances. DSOF ¶¶ 27–30. Strickland disputes that Sandefur believed that Strickland signed the grievance form, because the signature on the form is "obviously different than [Strickland's] signature on other documents, including the [DAF], and Sandefur had reason to know that that

5

was not [Strickland's] signature." Pl.'s Resp. DSOF ¶ 28 (citing R. 198-6, DAF; R. 198-7, Grievance).

On February 18, 2020, Sandefur sent an email to OPR advising it that Strickland's grievance regarding the Roll Call Incident stated that she obeyed his order, but at her deposition, she stated that she did not obey the order. DSOF ¶ 46. CCSO policy requires employees and supervisors to report alleged misconduct of fellow employees and inferior officers, or face discipline themselves. DSOF ¶¶ 70–74. It is CCSO policy that making false statements or lying is subject to discipline. *Id.*

As stated above, Sandefur testified that he believed Strickland had signed, or at least reviewed the grievance form, and therefore believed she had filed a false report. DSOF ¶¶ 27–30, 49. Sandefur's email to OPR also stated, "It needs to be noted that I am forwarding this complaint as I did not wish to receive discipline for failing to report the possible violation." *Id.* ¶ 47. Per OPR's request, Sandefur filed a formal Complaint Register form with OPR against Strickland on March 19, 2020. *Id.* ¶ 52.

Sandefur's only involvement in the OPR investigation was submitting the OPR Complaint and a telephone interview of the facts related to it. DSOF ¶ 55. OPR Investigator Siroky wanted to interview Strickland, but she was not interviewed because she sought, and was granted, a protective order preventing the interview. *Id.* ¶ 54. Steven Wilensky conducted the Command Channel Review of the OPR

6

investigation leading to a 75-day suspension and, in doing so, he reviewed the OPR file

After OPR's investigation, OPR sustained the OPR Complaint for conduct unbecoming and Steven Wilensky of Command Channel Review (CCR), issued a 75-day suspension to Strickland. DSOF ¶¶ 56–58. Wilensky's CCR of the OPR investigation consisted of a review of the OPR file; he did not talk to anyone or ask questions about the file. PSOAF ¶ 20. Sandefur did not have authority to administer discipline to Strickland; instead, as a sergeant, he had authority only to issue a write up for discipline. DSOF ¶ 61.

It is undisputed that Strickland has not served her suspension. DSOF ¶ 62; Pl. Resp. DSOF ¶ 62. According to Sandefur, Strickland did not appeal the suspension, does not plan to serve the suspension, does not believe she should be required to serve the suspension, and has not served the suspension. DSOF ¶ 62. Strickland disputes that she has not appealed the suspension, citing to evidence that she is on disability, which she argues means she is not able to serve or appeal the suspension. Pl. Resp. DSOF ¶ 62.

## Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460

7

(7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 256. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Parker v. Brooks Life Sci., Inc.*, 39 F.4th 931, 936 (7th Cir. 2022) (cleaned up). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

## Analysis

Strickland alleges that Sandefur retaliated against her for filing complaints against Sandefur, including the instant lawsuit, an EEOC charge, and an OPR complaint. As stated above, the supplemental complaint includes Section 1983 claims for depriving her of her First Amendment rights (Count I) and Fourteenth Amendment equal protection rights (Count II). Suppl. Compl. at 14–18.

8

## I. Fourteenth Amendment Equal Protection Claim

In Strickland's response, she concedes that, when there is an express constitutional basis for a claim other than the Fourteenth Amendment, the party should use the express constitutional basis. R. 208, Resp. at 15. Accordingly, Strickland requests to voluntarily dismiss her Fourteenth Amendment Equal Protection claim. Therefore, that claim is dismissed and Count I, for First Amendment retaliation, is the only remaining claim.

## II. Request for Reconsideration

As an initial matter, Strickland embeds in her response a motion to reconsider the Court's March 31, 2023 order granting Siroky and Parker's motion to dismiss. Resp. at 1 n.1, 5–8. Raising a request to reconsider an earlier order addressing a motion brought by two different defendants within a response brief is improper and the Court declines to consider the request. Nothing in this Order, however, should be read to address the merits of Strickland's arguments in support of reconsideration.

## III. First Amendment Retaliation

To establish a prima facie case of First Amendment retaliation, Strickland must prove that (1) she engaged in constitutionally protected speech; (2) she suffered a deprivation likely to deter her from exercising her First Amendment rights; and (3) her speech was a motivating factor in her employer's adverse action against her. *Deeren v. Anderson,* 72 F.4th 229, 235 (7th Cir. 2023) (*citing Cage v. Harper,* 42 F.4th 734, 741 (7th Cir. 2022)). "If [the plaintiff] produces enough evidence to establish these elements, then the burden shifts to the defendant[] to show that [he] would

9

have taken the same action regardless of the protected speech." *Id.* (*citing Sweet v. Town of Bargersville,* 18 F.4th 273, 278 (7th Cir. 2021)). If a defendant carries that burden, "then the plaintiff must offer facts reasonably suggesting that defendants' proffered reasons were pretextual." *Id.* (*citing Kingman v. Frederickson,* 40 F.4th 597, 601 (7th Cir. 2022)). Sandefur argues that Strickland fails on all three elements.

The Court starts with the second element, whether Sandefur's actions caused Strickland to suffer a deprivation likely to deter future First Amendment activity. The Court must first resolve the parties' dispute as to the standard applied to this element. The way Strickland sees it, the Supreme Court recently "set[] a very low bar" for the element, in that a plaintiff must only prove that there was "some harm respecting an identifiable term or condition of employment." Resp. at 8–9 (quoting *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 347 (2024)). Strickland acknowledges that *Muldrow* addressed a Title VII claim, but urges the Court to follow suit in the First Amendment context. *Id.* at 9.

As Sandefur correctly points out, however, the Supreme Court explicitly states in *Muldrow* that the holding is limited to discrimination claims, and does not affect retaliation claims. R. 197, Memo. Summ. J. at 8–9 (citing *Muldrow*, 601 U.S. 346, 357 ("Title VII's separate anti-retaliation provision . . . applies only when the retaliatory action is 'materially adverse,' meaning that it causes 'significant' harm. The City thinks we should import the same standard into the anti-discrimination provision at issue. But that would create a mismatch. *White* adopted the standard for reasons peculiar to the retaliation context.") (cleaned up); *Robertson v. Virginia State Univ.*,

10

2024 WL 1774821, at *15 n.6 (E.D. Va. Apr. 24, 2024) ("*Muldrow* reaffirmed that for a retaliation claim, a plaintiff must still show that a retaliatory action qualifies as 'materially adverse,' meaning that the action causes 'significant' harm.")); *see also Grady v. DM Trans, LLC*, 2024 WL 4581476, at *4 (N.D. Ill. Oct. 25, 2024) ("Although materiality is not required to allege Title VII discrimination, it is an element of Title VII retaliation claims."). Accordingly, the Court determines whether Strickland has adduced sufficient evidence that she has suffered a "materially adverse" employment action likely to chill future First Amendment activity.

Sandefur raises several arguments as to why Strickland did not suffer a sufficient deprivation caused by Sandefur: (1) Strickland has not served her suspension and does not plan to serve it; (2) in a previous filing, Strickland took the position that Sandefur's filing of the OPR complaint was not itself an adverse action so she is judicially estopped from so arguing now; (3) Sandefur did not have authority to suspend Strickland and therefore did not cause the suspension; and (4) Strickland alleges that Sandefur's OPR complaint is meritless or was otherwise false, so it would not deter future First Amendment activity. Memo. Summ. J. at 9–12.

It is undisputed that Strickland has not served her suspension. DSOF ¶ 62; Pl. Resp. DSOF ¶ 62. Sandefur argues that, under Seventh Circuit law, "a suspension without pay that is never served does not constitute an adverse employment action" for retaliation purposes. Memo. Summ. J. at 12 (quoting *Nagle v. Vill. of Calumet Park,* 554 F.3d 1106, 1120 (7th Cir. 2009); citing *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 531 (7th Cir. 2003) (no adverse employment action in disparate impact

11

case where employee was informed of impending demotion but was never actually demoted)). In *Nagel*, the plaintiff was given a suspension without pay, allegedly in retaliation for exercising his rights under Title VII. 554 F.3d at 1120. The plaintiff filed a grievance about his suspension, which was resolved in his favor, and he therefore never served the suspension. *Id.* The Seventh Circuit held that since the plaintiff never *served* the suspension, its imposition did not constitute an adverse employment action, reasoning that that "[u]ncertainty as to whether the suspension will be upheld is not equivalent to actually serving the suspension because the plaintiff does not have to endure the same economic harm." *Id.* at 1020–21. Therefore, posits Sandefur, because Strickland has not served her suspension—and has no plan to do so—there is no adverse action.

Strickland retorts that it is "highly dubious" that *Nagle* remains good law in light of *Muldrow*, and also argues that the suspension is on Strickland's employment record and will "undoubtedly[ ] affect her future career," since anyone can FOIA her disciplinary background and obtain a copy of her OPR file, and a police agency who conducts a background check will uncover her file. Resp. at 9. Additionally, contends Strickland, it is undisputed that she is on disability, which explains why she has not had to serve the suspension yet. *Id.*

As an initial matter, for the reasons explained above, *Muldrow* does not impact the standard applied to retaliation cases, so there is no reason to think that *Nagle* is no longer good law. The Court agrees with Strickland, however, that *Nagle* is factually distinguishable, as in that case, the suspension was actually overturned

12

when his grievance about it was resoled in his favor. *Nagle*, 554 F.3d at 1120. Here, it is undisputed that Strickland's suspension has not been overturned, as she has not appealed it (or filed a grievance about it, as the plaintiff did in *Nagle*). But the proposition of law articulated by the Seventh Circuit remains good law: a suspension that is never served does not amount to a materially adverse action. *Nagle,* 554 F.3d at 1120–21. As Sandefur points out in reply, however, Strickland fails to cite to any authority in support of her argument that a mark on her disciplinary record is sufficient to establish an adverse action that curtails future First Amendment activity, nor does she cite to any statement of fact or evidence that her suspension or the OPR findings will be on her disciplinary record or that it is subject to FOIA. R. 209, Reply at 9. Therefore, with no evidentiary support, the Court finds that Strickland's argument regarding other potential consequences of her suspension is speculative. *See Flowers v. Kia Motors Fin.*, 105 F.4th 939, 946 (7th Cir. 2024) ("[S]peculation is insufficient to defeat a summary judgment motion."). What's more, with no legal support, the argument is waived. *See White v. Richert*, 2019 WL 4062539, at *9 (N.D. Ill. Aug. 28, 2019) (citing *Pelfrense v. Vill. of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. We will not do his research for him.")); *see also Vertex refining, NV, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 374 F. Supp. 3d 754, 765 (N.D. Ill. 2019) ("It is not the role of this court to research and construct the legal arguments open to parties, especially when they

13

are represented by counsel.") (citing *Doherty v. City of Chicago*, 75 F.3d 318, 324 (7th Cir. 1996), *amended* (Mar. 28, 1996)).

Turning to Strickland's argument that she has not served the suspension yet because she is on disability, it is undisputed that Strickland is on disability. DSOF ¶ 62; Pl. Resp. DSOF ¶ 62. But again, as Sandefur points out in reply, Strickland "fails to cite to any evidence, rule, law, or Sheriff policy that says someone on disability cannot serve a suspension" or appeal a suspension (or that she cannot *still* appeal the suspension). Reply at 9. She has therefore again waived the argument. *See White*, 2019 WL 4062539, at *9. The Court must decide the motion based on what is presented to it, and the undisputed facts before the Court are that although Strickland was suspended, she has not served that suspension. In the face of no contrary authority, the Court finds *Nagle*'s holding that an unserved suspension does not constitute an adverse employment action to apply here.

As to Sandefur's argument that Strickland cannot claim that Sandefur's filing of the OPR Complaint is an adverse action, the Court does not understand Strickland to argue that the filing of the OPR Complaint (or the sending of the initial email to OPR) constitutes an adverse action. Rather, she argues that the filing of the OPR Complaint *caused* her to be suspended, which is the adverse employment action. *See* Resp. at 8–10 ("Sandefur filed the OPR Complaint Register that led to the investigation and the 75-day suspension. . . . *But for* Sandefur filing the Complaint Register, Plaintiff would not have received the 75-day suspension.").

14

To the extent that Strickland is arguing that the filing of the OPR Complaint is itself an adverse action, the Court agrees with Sandefur that Strickland is estopped from making such an argument. Memo. Summ. J. at 10; Reply at 10–11. As Sandefur points out, Strickland argued in her reply in support of her motion for leave to supplement the complaint that she was aware of the OPR investigation while it was ongoing, but she could not seek leave to add a retaliation claim until she was issued the suspension, because before that time, "there was no adverse action on which she could yet base a claim." Memo. Summ. J. at 10 (quoting R. 116 at 1). The Court granted Strickland's motion for leave to supplement, finding that she "did not delay in bringing her motion, as she filed her motion to supplement less than a week after she was issued a suspension that forms the basis of her supplemental claims." R. 117. Therefore, since Strickland previously relied on such an argument and prevailed because of it, she is estopped from arguing differently now. Reply at 10 (citing *Williams v. Hainje,* 375 F. App'x 625, 627 (7th Cir. 2010) (Broadly speaking, judicial estoppel precludes a party from abandoning positions after they have prevailed on them in earlier litigation.") (cleaned up)).

Because the Court finds that there is no question of material fact that Strickland has not suffered an adverse action or deprivation that deters future First Amendment activity, the Court need not address whether Sandefur was legally responsible for her suspension. Nor does it need to address the other elements of a First Amendment retaliation claim, and therefore does not decide whether there is a

15

question of fact as to whether Strickland engaged in constitutionally protected speech or whether that speech was a motivating factor in any adverse action against her.

## Conclusion

For the foregoing reasons, Sandefur's motion for summary judgment [196] is granted. Civil case terminated.

Dated: November 25, 2024

_____
United States District Judge
Franklin U. Valderrama